Good morning. Thank you, Your Honor. May it please the court, I'm Philip Trevino on behalf of Appellant Juan Gil, and at this point I'm prepared to submit on the brief that is before the court, but I'd be very happy to entertain any questions that the court might have. Let me let me ask my colleagues first. No, I don't have any. I have specific questions. Let me take a second here because I was going to wait until you began to ask mine. I didn't mean to catch you off guard. That's okay. I didn't mean to catch you off guard, Your Honor. I guess I only have one question, and this is the question of sentencing. Yes, Your Honor. Let me find what I was going to ask you. Our issue, of course, is with the district court having classified him as a career offender. Okay. And we have a multi-pronged attack. I want to go to that. We no longer have a Johnson issue in these cases, right, because of Beckles. Correct. So what's the problem with the classification of a career offender in your client's case? And Beckles applies, I think, perhaps more to the co-appellant, but as to my client, I think it's the particular fact pattern here that makes this so disturbing. I'm sure the court will recall my client was charged both with the RICO conspiracy and with the narcotics count, but he was acquitted by the jury of the narcotics count, and there was a great degree of overlap in the overt acts charged in both count one and count three. So, and thank you for reminding me, because I had a question. It is the judge looking at the evidence in this case who decides whether or not the crime qualifies, right? That is how it proceeded. We're not matching it up to some other judgment of conviction. No. And the judge has to get there by a preponderance of the evidence. Yes, Your Honor. So my question is, are you contending that the judge couldn't have concluded by a preponderance of the evidence that your client's crime in this case qualified? I'm contending that based on the instructions given the jury and the actual count charged in the indictment. See, my problem with the instructions given the jury is this is a finding by the judge, is it not? There is a finding by the judge that there was no witness tampering. If that's where the court's going, yes. The judge makes the finding that this qualifies as a crime of violence. He did make that finding, and I think that's the beginning of the error. Okay, so my question is, are you suggesting that there was not sufficient evidence before the judge in this case from which he could make that finding? In light of the jury's acquittal on the other count, I believe that that finding was erroneous. Even if the acquittal on the other count applied to all the crimes of violence, if you will, doesn't the case law say that a judge can make a finding on a sentencing matter even in the face of an acquittal on a preponderance of the evidence? In the face of an acquittal, yes, Your Honor is correct. So that's why I'm trying to figure, is your argument simply that without regard to what the jury did, there wasn't sufficient evidence for the judge to make this finding? No, my argument in great part pulls strength from the instruction that explicitly all of our law bases itself on a jury following the instruction. That's why you and I are having some difficulty here. We both agree that even if the jury had acquitted your client of the preponderance of the evidence, that your client had committed a crime of violence. It's unfortunate case law, but it's there. So my question is, are you now saying there wasn't even enough evidence for him to find it by a preponderance? On this record, yes. That is part of it. I just wanted to understand your argument. I think I can understand the court's concern. I don't mean to be presumptuous, but it does resonate. I do understand it. I think this argument has strength precisely because of particular facts that this record presents. The error in the instruction. I know the government spoke at great length about its arguments and how it steered the jury away from this and so forth, but it doesn't change the fact we presume jury to follow the instructions that they're given. The jury was given a defective instruction. The jury did return an acquittal on count three, and I think that feeds into why this subsequent finding by the court was an error. I understand your argument, but I was having some difficulty, at least from the briefs, figuring out precisely what you were arguing. I understand. If I may, I'd like to reserve my additional time for rebuttal. Yes, Your Honor. Could you go into a different area for me just for a moment? And that's the evidence that was obtained for Mr. Attiliano in the strip search, and I know it may be a stronger argument for your co-defendant or a different argument. Perhaps we'll hear from your co-defendant, but could you give us an overview for me? What is your argument as to why that shouldn't have been admitted with respect to Mr. Gill and also the significance of that evidence, which I wasn't clear on? Fundamentally, because there's no true tie to Mr. Gill. We have a reference to the M and the N, and there's a reference to Nitro, a moniker. Which is his nickname, according to Mr. Navarro. Precisely. The court's correct there, but we don't have any indication as to tying this actually to Mr. Gill. Well, but we have a search of an inmate that produces a package with your client's name on it. With a moniker. With a moniker, which other people say is him. Why isn't that a sufficient tie? I respectfully just think it was an evidentiary discretion of ruling for the judge, and the foundation wasn't there. So if the package had Mr. Gill's entire name, first name, last name, middle initial, would that have been enough? I think that would have been different. So your argument is that just having his moniker on it wasn't sufficient foundation? And no clear indication as to whether other people, other inmates in the gang, use that same moniker. Which is frequently the case with many monikers. So we just simply don't have a sufficient foundation here for that to have been introduced as our contention. Taking that one step further, let's assume for purposes of discussion that there is a basis for questioning whether or not that should have been admitted. Did it matter? In light of all the other evidence in this case? All the other evidence truly as to Mr. Gill really was from the telephone, was from the wiretap. Right. Mr. Navarro again testified about it. He's housed in prison on a different side of the country. So I think this was a unique piece of evidence. It was different. It showed more of an ongoing active participation in the gang, as opposed to what the telephone calls may or may not have been. So it's your position taking that evidence out of the case there would be insufficient evidence to have convicted Mr. Gill? I think it's a prejudicial error. It's harder for me to go to where Your Honor just said that it would be insufficient evidence. There are other aspects of sufficiency that we have challenged in the brief. I don't know that I could pin this particular piece in that argument. And if I may, I'll reserve the additional time. You've been trying hard and we will make sure you have time for Mr. Barajas. Good morning. May it please the Court, William Harris on behalf of Armando Barajas. Okay, we have a wiretap necessity issue in a career offender residual clause. Let's start with the sentencing one first and see if I see if I can work through this. Okay. We agree now that the residual clause in the guidelines is not unconstitutionally vague. We agree to that because the Supreme Court told us we must agree to that. That's right. Okay, so what what is your attack on the career offender enhancement then? Johnson eliminated the due process argument under the Fifth Amendment. Johnson, however, also overruled the the former President James Sykes and Begay. And the problem I have is that the case that was on point here, the Park case, United States versus Park, which held which is a Your argument is that 459 no longer qualifies as a previous qualifying offense as a crime of violence. So what Johnson did it was it overruled the precedents that underpinned the Park case. So Park is no longer good law after Johnson. This was pointed out in the Lee case. I believe Your Honor was involved in that one by where we guess where where Judge Akuta guessed right about what she was kind of prescient on that. She was ahead of the Supreme Court. But her her point was that you can't rely anymore on Park is no longer good law because the cases on which it relied were expressly and impliedly overruled by Johnson by the Supreme Court. I want to understand your argument. Your argument is that we no longer can rely on our precedents for holding that 459 was a crime of violence. So my next question is, if that were true, can we find it to be a crime of violence for the same reason that our precedents did? In other words, did the Supreme Court say no, 459 is not a I don't believe it's ever said 459 is not a crime of violence. And so if our previous precedents have been put into doubt, as you say, don't we have to address that issue de novo today? Well, you get into a more fundamental question that Judge Akuta said that it would be procedural error to rely on the to rely on the career offender residual clause because of the indeterminacy. But she was assuming, I think in that case, the majority, she said the majority assumes this might be unconstitutional. And then she says, if it is unconstitutional, then you can't rely on our previous precedents. And then the Supreme Court told us it wasn't unconstitutional. So I'm having some difficulty with your argument that somehow the Supreme Court sold us that 459 is not a crime of violence. And if they haven't told us that, even even if you're right, that it they've somehow undermined our previous precedents, don't we have to, in this case de novo, decide whether it is? Well, the district court, the problem is this is this clause doesn't exist anymore. So we're doing archaeology here. Now they've changed the sentencing guidelines, but you're subject to the ones that were in effect at the time. That's right. So if the the district court relied on United States versus Park. Park, if it's no longer good law, then the district court, because the district court. And that's what I'm asking. Let's assume for a moment. I'm not sure I get there with you, but let's assume Park is no longer good law. And the government says they have two previous convictions under 459. Your client has two previous convictions under 459. Those are crimes of violence. And doesn't somebody have to decide that issue, even if we don't rely on Park? Well, as I argued in the brief, I believe under Taylor, if you go back to the to Taylor, 459 is categorically overbroad. And I gave the example in the district court to the judge that let's say somebody walks in to a Sunday open house intending to steal some silverware. That's burglary. But it's an example of why California burglary is categorically overbroad. And so therefore it would not qualify under the categorical approach of Johnson. And I also made the argument in the in the brief that if you if you there's a surplusage argument under that former clause, because if you say under the enumerated felonies clause following desk camp, but this is not doesn't this is not an enumerated felon. Correct. It's a residual. It's a residual clause issue. But if it under that residual clause, it doesn't it doesn't apply under the enumerated clause, but says otherwise. And then it goes on to say, and my argument was that if the otherwise covers everything, it renders the enumerated part of it surplusage. And so that is a that is a problem to interpret it the way that your honor says. So for those were the two other arguments. And I understand. Do you want to turn to the wiretap? Yeah. I mean, it really comes down to this. If state wires are a title three procedure, as the government argues, we lose. If state wires are not a title three procedure, we win. And the point is that we have another that's the crucial issue here that has to be decided. Your argument is, I take it, there's no necessity for a federal wiretap because there were state wiretaps because the state courts were willing to give wiretaps, right? Correct. And that's it. So does that work the other way, too? So when somebody goes into a state court under title three and seeks a wiretap, do they have to show that there's no ability to get a federal one? I don't believe that there's that sort of a issue in federal court, in state courts. Well, there's almost the opposite in Reed, which says that, right? I mean, you depend on the Reed's footnote that says if, what, if the government, well, if there's a local agency that pursued a certain investigative technique and it was not fruitful, I mean, you can use that to show necessity. You, meaning the applying federal agency, for a title three tap can use that to show necessity, right? Correct. That's what Reed says. And so, and so your argument is the converse of that. Correct. And have you seen that applied in any other case? No, frankly, I came up with this one, Your Honor. You've done well in coming up with all this. So, so, but is it part of your argument now that, is that, is that the same as what you started out by saying, is that the question is whether or not a state tap is a, comes under title three? Correct. And if it does not, then it qualifies as an other traditional investigative procedures. And ergo, nobody disputes that they could have done the whole investigation on state wires, and the joint task force started out with state wires. So your argument is that a state wire tap is an other investigative procedure. Exactly. But isn't it exactly the same investigative procedure? I mean, in, in normal parlance, not, not, one would think that an other investigative procedure was something other than a wire tap, right? Well, other investigative procedures, in my mind, means non-title three. So you get back to the structure of the statute. Just a minute, though. It seems to me I'm familiar with the case of the Taiwan, you tap X under the court's order, but that's not sufficient, so we want to wire tap Y. Doesn't that, in other words, isn't that included in the necessity analysis? I'm not sure I followed the argument, but, but the... Well, you get a court order authorizing the tap of, you know, defendant X. Yes. And you, and you, you conduct that tap and says, well, you know, it's not producing anything. We have, we need a wire tap on Y. So you show in the application for the Y wire tap that, well, we wire tapped X, but, you know, we didn't get anything out of it, so we got to go, go after Y. Can't you use that? You mean the government used that to show necessity? That was Reed. That's the, that was the Reed situation. In my mind... Judge, picking up on Judge Tsushima's question, have you found any case where that analysis has been applied to the same defendant in both cases? No. I mean, there's, there's no law in this. It's, it, my argument is the structure of the statutes, and the reason that, that... Think of the policy of the statute for a moment. Normally, what, I mean, what the policy to me says is, we don't want to let you wire tap somebody unless you have exhausted other avenues of recourse. In, in this case, it's harder to see that policy being violated by just simply saying, we're going to change the name of the guy who signs the warrant from a state judge to a federal judge. Indeed, without any insult to state, just to the state courts, there's, I know how the federal courts scrutinize these things, and my guess is it requires a high, you know, you, I'm pretty much more confident that the judges reviewed it carefully in the federal circumstance. The answer to your policy question is that state wires are more restrictive than federal wires. It's a higher hurdle to get a state wire. That's in California. But not necessarily nationwide. No, I'm dealing with California penal code, and so I haven't studied other's cases, but the, the, the answer... But doesn't that ultimately hurt your argument? I mean, the whole policy notion, and the necessity, the reason we have the necessity showing, is to make sure that before you go to this extremely intrusive investigative step, that you have exhausted the less intrusive investigative steps. If the state has the same level of intrusiveness, if you will, you're talking about what you have to show to get the state wire, and I understand that's slightly different, but it's just as intrusive as the federal wire. It's just as, as much of a concern that, that you would have in the federal context. So why should you have to exhaust it from a necessity perspective before you get a federal wire? It's more restrictive under the state, more protections for the individual, because there's more... But, but the actual investigative technique is just as intrusive. It's the same investigative technique. It's a wire tap, right? It's the same electronic technique, but there's higher hurdles to get it on the state, so there's more protection, Fourth Amendment protection, for the citizen under the state regime than the federal regime, and it's, there's two different... Well, how could then that there be a requirement under Title III that you, you, you have to exhaust the most protective, or the highest showing, before you fall back and have a lesser showing? I mean, I don't, I don't quite understand that, why the level of showing you have to present really addresses the necessity aspect of Title III. Well, Title III, as I read it, is you don't, you don't go to state, to federal wires, unless you have really no other way to do it, and so you first... I think that's because you don't, because by the time you get to the wire, you're, you're intruding on, on a, an individual's rights at a level that's far higher than all of the other steps that lead, lead up to it, and that's where your argument doesn't... It's creative, but I don't see it really going to the whole concept of necessity under Title III. Well, I think it comes down to the pivotal issue is whether or not state wires are a non-Title III procedure, under the structure of the statute. I mean, this, this may be, just be an anomaly in the statute that needs a legislative fix, but it seems to me you read the statute, and the fact that state wires are, you know, a completely different source of law, having nothing to do with the federal government. They're regulated by the federal government, but not a creature of the federal government, and if that's the case, it qualifies as an other investigative procedure. I, I think we have your argument, and you, you've run over. We'll give you a minute for your argument. Good morning, your honors. May it please the court. Anthony Brown for the United States. Your honors, I'm going to address the, the four issues that the court has brought up. I'll start with the Title III issue that Mr. Barajas raised. I'll say, Mr. Harris keeps trying to define this as a question about whether a state wire tap is a non-Title III investigative technique, but really, the, what the statute asks is whether it is an other investigative technique, and so if we look at the statute itself, which talks about other investigative techniques, it clearly means other than wire taps. Can you respond to Judge Tashima's question and read, we essentially said if you're wire tapping A, you can come in and say, that's an other investigative technique that hasn't led to me enough evidence on B, and so I'd like a wire tap authorized for B. So why is your argument consistent with Reid? Well, but, because that has nothing to do with other state wire taps as other investigative techniques. There's a separate requirement in Section 2518 that requires the government to disclose all previous wire tap applications. I guess, let me ask the question differently, and I'll just rephrase it as a hypothetical. I'm wire tapping A. I'm law enforcement officer wire tapping A, and I, I can't get any evidence about B, and I've tried all other ways to get evidence about B, and so I go for a federal wire tap application, and I say to the district judge, I'd like a wire tap application on B, and to show you that I've exhausted all other investigative techniques, let me show you that I've, I've already tried to wire tap his co-conspirator A, but he never says anything about B. Can you use that previous tap on A as an other investigative technique to show the, to show the necessity for the new wire tap on B? No, that's not an other investigative technique, that's a wire tap, and the, you still have to show, you still have, you know, you just change that slightly though. Isn't it possible to, to not including Title III wire taps? No, it's not. Why not? Because we're in a wire tap Title III statute that's talking about wire taps, and when it talks about other investigative techniques, it means other than wire taps. Other than Title III wire taps. Well, for instance, what about, suppose you have access to a private wire tap, is that covered? That's a good question, I don't know the answer. Yeah, it is a good question. I'll tell you why a state wire tap is a Title III wire tap. State wire taps are also Title III wire taps because the Title III sets a floor for all wire taps around the country, whether they're state or federal. So it applies to state procedures. It applies to state procedures. You must at least, you must at least comply with Title III, but the state has the ability to set a higher ceiling. It does, that's correct, and if I can circle around to the supposedly higher ceiling in California. Does it just want to point out that the the case that Mr. Barajas is relying on for that, which is People v. Conklin, doesn't really have anything to do with law enforcement applications for wire taps. It has to do with the private offense of illegal wire tapping somebody. So let me change, let me change this scenario a little bit. What if you went to a state judge for a wire tap on a particular showing and the judge said no, could you go to a federal judge and get a wire tap? You could, and what you would have to do is, this was the point that I made initially, you would have to disclose under 2518 that we applied and we could not get it. So if you can get one if you've applied and been denied, why should you be able to get one if you've applied and got one? Well, there could be many reasons. One is, as happened in this case, the state wire taps ended. You know that they have time limits, right? So it could be that the state wire taps ended. In fact, the argument that Mr. Harris is making is not that previous wire taps necessarily excluded, but they're saying there's, if you're already conducting a state wire tap, why not go back to the state? And for policy reasons, that doesn't make any sense at all because obviously it's the same interference with privacy under the state wire tap or the federal wire tap. As I recall this case, and I may not recall the facts precisely well, what happened was there was a state investigation going on and then a combined in some way. That's correct. In fact, they found out that there was one suspect who was part of both investigations. And so a federal case was sort of spawned for that. But that also points to another difference between state wire taps and federal wire taps, which is you can't investigate a federal RICO case with a state wire tap because it's not listed in the California Penal Code as one of the crimes that can be investigated. But you can investigate. There may be a predicate offenses listed. You can investigate predicate offenses. That's true, but you can't investigate RICO. There may be some overlap, but there is that difference between the two. If I want to investigate a RICO, a federal RICO case, I cannot go to a state judge and put in the affidavit, we're investigating a federal RICO case. That I can only do under a federal wire tap. Can you, can you address, and we didn't talk about it much with your, with your, with your colleagues here, the argument that the judge somehow misinstructed or failed to instruct the jury correctly on implied threats? Oh, on implied threats. The, the, the argument is that the jury came back with a note and it said, can a threat be implied? That was the question. And the, and there was some argument about how, how to address that. Everybody agreed that under California law for extortion, a threat can be implied. But defendants wanted to add some additional language. About what an implied threat? About what an implied threat would be and whether it, there had to be a physical threat or anything like that. And the judge just said, no, if we all agree that they can be implied, that's the only question that the jury asked. That's the only question. The jury didn't ask what is an implied threat. They did not. They just asked whether a threat can be implied. That's correct. The judge's response to that question was. And the judge's response was. Didn't he also tell them to look at the instructions? The jury note said, threat as used in the definition of extortion. Does it have to be explicit or can it be implied? Right. And the judge's response. And the judge said a threat can be explicit or implied. Okay. Okay. And the, and the review of that is abuse of discretion. That's correct, your honor. Then, then I suppose, and on that review, I, I suppose your argument is, well, you know, implied is just a common word of ordinary usage in that everybody understands. I believe so. I mean, there's nothing technical about, you know, whether something is implied or not. No, and I mean, the fact that the jury used that very language, I think, would suggest that it's, you know, a word that's normally understood. Are there any other questions? Well, could you address the Attiliano evidence that was obtained? Not, not so much with respect to Mr. Gill, because I do think there's, there are different issues in terms of some indicia of connection to him. How about Mr. Barajas? Was it, it was admitted against Mr. Barajas also, right? Yeah. Let me, let me take some time to look, because some of the, the foundation evidence for this is in different parts of the record. So let me see if I can point out what's going on here. First of all, the last overt act that was alleged in the RICO conspiracy was the finding of these notes. And what was... Neither note is to Mr. Barajas, right? With regard to both. I'm sorry, maybe I didn't understand your question. What, what we're, what I think Judge Seaborg's asking about, but certainly what I'm interested in is, what's the evidence, what's the evidentiary link to Mr. Barajas? Right, right, right. So I'm trying to get there. So to Mr. Gill, we understand there's a note allegedly addressed to him, and that's, that seems like a pretty good foundation. What about Mr. Barajas? Right. So, okay. So the note itself, there were actually two notes. Right. The first note was a note that was addressed to 5 Mesa, and it said hot on it. It had sunkiss stickers on the outside, which we learned from other testimony in the case, was one of the signs that was used by the OBA to indicate gang membership and gang association. The sheriff's deputy that found it said that Unit 5 was the high security area of the West Valley Detention Center where members from the house there. There was... I didn't see any, but there was... I didn't see any. That's why I'm asking. There was some evidence that he was housed there, but not during that period of time. No, Your Honor. There was evidence that Mr. Gill was housed there, that was introduced early on in the trial. There were jail calls that were played for the jury from March of 2012, which is just a couple months before that, and one of the first witnesses... But again, that's all Mr. Gill. That's all Mr. Gill. Let me get back to Mr. Barajas. The contextual clues within the note itself, and other evidence that informed the jury about who members of the gang were that were mentioned in the note, tell us that the note was intended for Mr. Barajas. So let me walk through the first note. The first note said, a homie, Lil Spanky from OJRBAs, which is the gang that Mr. Barajas and Mr. Gill are associated with, came with a package for two seniors, SRs, M and N. They're in two gloves with their letters on them. Can you, por favor, send us a verbal or a kite, a signal for kite, letting us know that this was a TD, a touchdown. That note was  Now there was evidence... So before you go on, that's a note that indicates this was intended for members of the gang in Unit 5. That's right. Tell me, and maybe that's enough, but is there anything specific there indicating that it was intended for Mr. Barajas? Well, I think that... In your argument, let me just finish. Your argument may prevail otherwise. In other words, you've shown he was part of the gang. You've shown they were distributing drugs. You've shown that this was intended for the gang there, but I guess I'm just interested in any specific link to him. So the specific link would have to be inferred by the jury from the following facts, that there were indicia of associations with the gang that were on the outside of the note, that the note mentions two seniors, M and N. One of them is Mr. Gill, from the name Nitro that's on the package, and we know that Mr. Gill and Mr. Barajas were associates. We also know that Mr. Barajas was a senior member of the gang and also a member of M.A. But the other clues are that we also know that these were gang members that are both mentioned in the note and that brought the note in. Mr. Navarro, who was the government's cooperator, mentioned that Little Spanky was an OJRBA member, and he also mentioned that Drowsy, one of the people mentioned in the note, was an OJRBA member. That's it. And I think the jury could have inferred from the fact that it was intended. In a conspiracy case, what you're saying is we've shown that these folks were conspiring with each other. That's correct. We've shown they were conspiring in narcotics, among other things to distribute narcotics, and we've shown that they're members of the gang, and here comes a package that's clearly addressed to the gang, to senior members of it, and so it shows that this is part of the conspiracy. It shows that the Rigo conspiracy is ongoing through December 12th, or December 17th, 2012. Whether or not it shows that the package would have wound up in Mr. Barajas's hand, I think it does that for Mr. Gill, for sure. For Mr. Barajas, even if there's a question, this is relevant evidence of the existence of the racketeering conspiracy. And he's only convicted of the conspiracy? Well, now we're going to the harmlessness question. Yes. And both, well, Mr. Barajas was convicted of the 846, but he was acquitted of heroin. So the heroin that was found... That was count two of the... So he's convicted of count one and count three. Count three, right. And for count three, the jury only found that he had conspired to distribute methamphetamine and not heroin, and... These were packages of heroin? There was one package of meth that was intended, I believe it was intended for somebody else, and then there was a package of heroin that was in there that was intended for M and identified in the note. And we also know that Mr. Gill was acquitted of the 846 count. 846 to... I'm sorry, that's the conspiracy to distribute heroin and methamphetamine. He was acquitted of that count. And that goes to the harmlessness of the introduction of this evidence if it was admitted in error. Go back again, I just wanna make sure I've got this straight. He was convicted of conspiracy, RICO conspiracy. Barajas was convicted of RICO conspiracy, Gill was convicted of RICO conspiracy. Right. What were the predicate acts for the RICO conspiracy? There was drug trafficking. Extortion. I'm sorry. Right, no, there's a whole group of them. I'm just trying to figure out in this case, but he was acquitted of the heroin conspiracy. He was acquitted of a conspiracy to distribute heroin, that's correct. So if to the extent he was convicted under RICO of narcotics crimes, it must have to do with methamphetamine. It could have, yes. Because those are the only two theories the government... Well, not necessarily. Look, I think that there are many cases that say inconsistent verdicts by the jury don't necessarily... I'm trying to rationalize it. Yeah. I think there were plenty of calls where Mr. Gill talked about distributing methamphetamine, and certainly the jury could have convicted on those calls under the RICO, under the racketeering conspiracy. To take back, to go back to Judge Seaborg's initial question, your argument is not that there was a specific indication that this package was headed to Mr. Barajas. It might have been, but you don't have the kind of evidence you had with Mr. Gill that the package was headed to him. I'm saying that the evidence for Mr. Gill was definitely rock solid. I'm acknowledging that the evidence for Mr. Barajas... Yeah, Ron, let's understand your acknowledgement. I just want to make sure what your acknowledgement is. Your acknowledgement is that there's no specific evidence that this package was directed to Mr. Barajas, other than the fact that it was being directed to a senior member of the gang, and he was a senior member of the gang. That's correct. There was circumstantial evidence. I don't think it was as strong for Mr. Barajas, but I don't think it matters because it was still relevant evidence of the existence of the racketeering conspiracy. Let me turn to the sentencing questions, and I'll start with Mr. Gill's sentencing issues. There were really two issues that he raised, and the first was, if the jury was instructed on witness tampering, and that is not a crime of violence or a drug trafficking crime for purposes of a career offender, then how can the RICO... And my question to your colleague is the same question I asked you. Does it matter at all what the jury was instructed about in this case? I don't think it matters for obviously the reasons that we mentioned in the brief, but for the additional reason that was not discussed earlier is that the prosecutor in this case told the jury, we don't have any evidence of witness tampering. It was a jury instruction that was in there inadvertently, and there was no evidence of witness tampering. The jury could not have convicted on witness tampering anyway. All the other predicate crimes that are mentioned in there are either crimes of violence or drug trafficking crimes. And so as a matter of even the... Just looking at the predicate crimes... I'm trying to understand the argument here, because this is a very different analysis than if we were talking about prior conviction. We were trying to... We were confined to the indictment and the rest. Right. Does it... I guess perhaps this is a follow-on to Judge Hurwitz's question. Does it really matter if there was evidence of witness tampering in the case if there was also evidence that supported violent criminal conduct? Would that then put you in a difficult position? Or is it your position, as long as there's sufficient evidence of violent conduct, violent criminal conduct, we could have witness tampering and it wouldn't matter for purposes of the determination that trial judge made? I think that's a good question from the point of view of the categorical approach. But not... We're not... That's not the question Judge Seaborg's asking. He's not asking whether or not we have to apply a categorical approach to this. We don't. This is a judge looking at the case. He's entitled to look at the predicate offenses, because that's what we say you do in RICO cases, to determine whether it's a crime of violence. And so it really doesn't matter if the jury convicts... If the jury specifically found witness tampering, too, as long as the judge looking at the record, by a preponderance of the evidence, can find that one of the predicate acts was committed and it was a crime of violence. Isn't that enough? I don't... That's the question of your... Yeah, I would think the answer would be yes. I think your answer ought to be yes, but if it's not, I'm worrying that somehow I've got the case wrong. I think it... I wanna be careful about this. I think because there is case law out there that talks about how to address the... There's a case that we did not discuss in the briefing, and... But it is a case that's on point. And I don't know if it's fair for me to mention it now. What's the case? It's called United States versus Sahakian, and it's an unpublished case from 2013. And it holds that RICO conspiracy conviction qualified as a career offender... For the career offender enhancement, where the indictment and instructions specified the type of racketeering activity at issue, and the jury instructions required the jury to agree on which type of... Sure, that's easy. Of course that qualifies. That's not what we're asking. We're asking whether or not it would qualify, even if the jury instructions allowed them to convict on a non violent crime, if the judge thereafter in reviewing the record thought there was sufficient evidence of a violent crime. I think in that case, as the... Let me cite the case that we have in our brief. As the United States versus Scott case holds, the judge can look behind the indictment and can look at the evidence in the case. He can make that determination. Yeah, as long as one of the predicate indicted acts is a crime of violence. That's correct. I don't think a judge could, if you only indicted somebody for conspiracy to commit extortion, look behind the evidence and say, well... I'm sorry, to do witness tampering. I'm not sure he could look behind the evidence in that case and find a violent... If the only thing charged in the case was witness tampering, I think I might agree on that. One of the... But in this case... One of the alleged crimes has to be a crime of violence, and then the judge has to figure out whether or not he actually did it. That's correct. I wanna ask you one more question on sentencing. The United... The Supreme Court has granted cert in Sessions versus DiMaia, which involves the residual clause in the immigration statutes. The predicate crime in that case, or the previous crimes, were 459. As I read the cert application and grant, I don't think the court is reviewing whether 459 is a crime of violence, but should we wait for the Supreme Court in Sessions? No. I see... In Sessions, DiMaia. I'm sorry. They're all Sessions. Yeah, you can continue. Should I answer? Okay. And it's a little bit longer of an answer than I would normally get. Short answer is no. And the longer answer is that Park still applies here. No, no, no. It's not what I'm asking. I'm just asking whether or not you think the Supreme Court, in this case, will address the question of whether 459 is a crime of violence. I'm not sure. I don't think they will. And even if they do, I don't think it's necessarily gonna matter for purposes of this case. Because what we're dealing with in this case, as I said, is there's a Ninth Circuit case on point, United States versus Park, and I don't think it's gonna matter under this particular guideline. Well, I suppose Mr. DiMaia could win... That's true. If he convinced the Supreme Court, or Ms. DiMaia, I don't know who it is, that 459 was not a crime of violence, because then the court could say, we don't have to worry about the constitutionality, the residual clause, and the immigration code. So I ask it because it's a possibility. I don't think the cert petition is directed to that, but I ask... That's why I ask the question. Right, but the question in that case has to do with the immigration code and not the advisory guidelines. And as we know after Booker and Beckles, the analysis under the advisory guidelines is much different. In fact, there is no due process vagueness claim after Beckles for the residual clause. Thank you for responding to my question. Your time's run out, and I know you have some time left for rebuttal. Well, if I do, yes. And you can use it. I'll be very brief. I think the court has the sentencing issue we presented well in hand, but it seems to me we've lost one little point that does deserve to be focused on. I know Your Honor has brought up the fact that the court can make its finding by a preponderance, and we're not quarreling with that. The reason I think this argument still is persuasive here is because fundamentally, I think the district court erred in making its finding, and the reason it erred is because of these other errors that are in the record. So I understand why the court is parsing the instruction error and saying, well, that doesn't invalidate and still but it's on this specific record with the acquittal on the narcotics count, with the erroneous instruction, also with the question from the jury about the threat. These are all reasons the district court should not have made the finding that it did, and that's the reason we believe the argument still prevails. And otherwise, I'd submit the matter for the court. Thank you. Thank you. Why don't we put a minute on the clock for you? Thank you. Just two quick points for the court's consideration on the state wire issue. Number one, consider consensual recordings by a C.I. It's the same electronics. It's obviously a non-Title III procedure, and consider whether or not state wires fall under the same category as C.I. consensual recordings. Thank you for reminding me because I want to ask you to respond to the government's point on this. The government's point is that state wire taps are a Title III procedure in the sense that they must comply with Title III. Is that correct? Yes, but it doesn't follow. A private television station has to broadcast in conformity with FCC regulations. That doesn't make it a procedure. No, I'm asking a very specific question. Aren't state wire taps a Title III procedure because you must satisfy under federal law, which is supreme in this case, the requirements of Title III before you can obtain a state wire tap? That's what I was trying to give by the FCC example on a that a state wire has to be in conformity with Title III requirements, in conformity with, and that's why I gave the example of a television station must broadcast in conformity with FCC regulations, but that doesn't make it a federal broadcasting station. I guess another way to say it is just because you have to comply with a federal regulation doesn't make it a federal procedure. I understand your argument. And so anyway, the question is whether or not state wires fall are kind of like consensual recordings by a CI. And why don't you wrap up? And the other is with regard to whether or not you can... Wait, how can they? I mean, there's a big difference between a consensual recording in terms of going back again to the level of intrusiveness, if you will. That's a very different and less intrusive investigative technique, isn't it, than a Title III wire tap? And state wires are less intrusive than federal wires, and that's the only reason... How so? That's what I don't understand. Well, because that's laid out in the... For example, there's a two-party consent rule in California, and in federal there's a one-party consent. I mean, and that Halpin case goes through other examples. I mean, some of them are fairly technical. But doesn't that hurt you? My difficulty with that is, so if you're a federal investigative officer and you want to do a wire tap, you say, I don't want a state wire tap, which is so restrictive. I'd like a federal wire tap, which doesn't have these restrictions, assuming they exist. Your opponent says they don't exist. But let's assume... So we're saying once state officials have gone to a state court to get a wire tap under more difficult conditions to get it from a judge, federal officials are thereafter prevented from going to a federal judge to get a wire tap? Well, you have to... Your answer is yes, isn't it? Just because it's more difficult... It's got to be yes or no. It's a yes or no answer. Is your answer yes? I guess I lost the thread of your argument. Well, it's yes or no unless you can explain why there still is a necessity in spite of the state wire tap. Well, sometimes there's all sorts of traditional investigative procedures that are more difficult. I mean, it's really difficult to introduce an undercover agent into a drug cartel. You know, that's more difficult. Let's go back to my question. Put the necessity issue aside. Is it your position that once you obtain a state wire tap and you say it's more difficult to get a wire tap in California, that the federal government is thereafter precluded from obtaining a federal wire tap? Yeah, as long as the state wire tap is productive and if you can take down the whole Ontario Black Angels through state wire taps, there's no need for a federal wire tap. Thank you. I just wanted to make sure we were on the same wavelength. I thank counsel on both sides for their arguments. We will be in recess probably for about 20 minutes, I think.
judges: Tashima, Hurwitz, Seeborg